## ANDREW HEISCH v. J. E. ADAMS ET AL.

### No. 6973.

1. **Verdict Insufficient.**—"We the jury find for the plaintiffs, defendant to pay balance of purchase money on tract of land sold by Adams to Heisch, with interest at 10 per cent per annum from date of sale until procuring patent on same and 8 per cent from said date until suit was instituted on same, July 16, 1888." *Held*, this verdict could not support a decree of foreclosure, nor was it sufficiently definite in the amount of the recovery.

2. **New Promise—Pleading.**—Adams conveyed by quitclaim 160 acres of land to Heisch, the purchaser paying part cash and giving notes for deferred payments. Before the notes were barred by limitation Heisch, dealing with an agent of Adams' heirs, agreed with the purchaser not to sue until a patent should be procured.    The patent was procured and suit was brought, the petition setting out the facts. The notes were barred by limitation at suit.    The court properly charged that upon the promise to pay upon issuance of patent and the obtaining of the patent the holders of the notes could recover, and the notes being the basis of the amount to which the agreement referred, were properly set out in the pleadings as part of plaintiff's case.

3. **New Consideration.**—The extension of time and the obtaining of the patent under the circumstances were a consideration for the new promise, binding what, but for some new consideration, would have been invalid as a promise without consideration.

APPEAL from Williamson.    Tried below before Hon. John C. Townes. The opinion states the case.

*Cochran & Parker,* for appellant.—1. The charge of the court should have been confined to the state of case presented in the petition and made by the evidence; and as plaintiffs set up the notes as the cause of action and prayed for judgment thereon and not upon the new agree-

ment, the court should have instructed the jury to return a verdict for appellant under the plea of limitation specially interposed. Graham v. McCarty, 69 Texas, 323.

2.  From the pleadings and the evidence nothing appears which would destroy or qualify appellant's liability to pay the notes, and it appears that he was in possession of the land for which they were given, holding under Adams.  This being the case, it is submitted that he was at all times bound to pay the notes, and that the alleged words of estoppel, or new promise, was but a promise to pay what he was already bound to pay, and that the allegation of change in the time of payment and making same conditional that a patent issued was not supported by the evidence, and because there was no evidence to support the allegations in the petition the court should have instructed the jury for appellant.

3.  The extension of time given the maker of the notes without a consideration passing from him to the payee was void and the notes still represented the contract unchanged.  The notes could have been sued upon at any time before the patent issued; and such being the case, when the notes expired appellant's cause of action was at an end. Claiborne v. Birge, 42 Texas, 98; Burke v. Cruger, 8 Texas, 66; Bates v. Starr, 21 Am. Dec., 568; Parmelee v. Thompson, 6 Am. Rep., 33; Wright v. Bartlett, 43 N. H., 548; Beckner v. Cary, 44 Ind., 89; Clarkson v. Creeley, 35 Mo., 95; Martin v. Black, 20 Ala., 309.

No brief for appellees reached the Reporter.

HENRY, ASSOCIATE JUSTICE.—Appellees as sole surviving heirs of James E. Adams sued appellant, alleging that on or about September 29, 1880, said James E. Adams sold to appellant a tract of 160 acres of land in Williamson County for the sum of $500, and that of this sum defendant paid $50 in cash and executed to said Adams three notes for the balance—giving one note for $50 due January 1, 1881, and two notes for $200 each, the first due January 1, 1882, and the other January 1, 1883.

They allege that the $50 note was paid at maturity, and copy the other two in their petition.  The note maturing January 1, 1882, as copied, shows the date of its execution to have been January 1, 1881, and the one maturing last shows to have been executed January 1, 1882, but it is alleged that notwithstanding said notes are so dated they were in fact executed with the deed on the 29th day of September, 1880.

Appellees further alleged, "that on or about the —— day of ——, 1885, and before either of said notes were barred by limitation, L. L. Hatcher, as agent of their father, again demanded payment of said notes from appellant, who then and there claimed that the said Adams' title to the land for which the notes were given was defective; that he

had no patent to the same, and that there was no consideration for said notes, and he refused to pay the same or any part thereof. Whereupon Hatcher, as agent for Adams and acting within the scope of his authority, made and entered into the following agreement with defendant, to wit: J. E. Adams on his part, in consideration of the promises of the defendant hereinafter mentioned, promised and agreed not to institute suit against defendant on said notes foreclosing said lien, and at his own expense to obtain a patent from the State of Texas to the aforesaid 160 acres of land and to deliver it to defendant. Defendant, in consideration of the aforesaid promise of J. E. Adams, promised and agreed on his part that as soon as J. E. Adams obtained said patent to said land he would pay the said J. E. Adams the full amounts mentioned in said notes, principal and interest, according to their tenor and effect; that in compliance with the said contract and agreement the said J. B. Adams did not institute said suit, and on June 9, 1887, obtained said patent from the State of Texas to said 160 acres of land, and paid the expense therefor, amounting in the aggregate to about $75, and immediately thereafter tendered said patent to defendant and demanded from defendant the payment of said money as per agreement."

Plaintiff prayed for a judgment upon the notes and for a foreclosure of vendor's lien upon the land described in their petition. The defendant pleaded the four years statute of limitations and a general denial. The case was tried by a jury and the following verdict was rendered: "We the jury find judgment for plaintiffs. Defendant to pay balance of purchase money on tract of land sold by Adams to Heisch, with interest at 10 per cent per annum from date of sale until procuring patent on same, and 8 per cent from said date until suit was instituted on same, July 16, 1888."

Upon this verdict the court rendered a judgment in favor of plaintiffs for the sum of $637.50, which the judgment recited was estimated as follows: "Two hundred dollars with interest at the rate of 10 per cent from the 1st day of January, 1881, until the 9th day of June, 1887, and the further amount of $200 with 10 per cent interest thereon from the 1st day of January, 1882, until the 9th day of June, 1887."

The vendor's lien was foreclosed upon the land described in the petition, and it was ordered to be sold in satisfaction of the judgment.

Appellant complains of the judgment, because of the uncertainty of the verdict and because it did not establish a lien or authorize the decree of foreclosure. We do not think the verdict supports the foreclosure, and for that cause the judgment must be reversed. The form of the verdict as to the amount of recovery is not as certain as it could and should have been made.

It is contended by appellant that the court erred in charging that plaintiffs could recover upon the alleged parol promise:

1. Because there were no pleadings to authorize such a recovery.

2. Because plaintiffs did not allege that there was a new agreement by which the notes were no longer to represent the contract to pay the money.

3. Because plaintiffs' pleadings set up the parol agreement not as a distinct cause of action but as an excuse for not suing upon the notes before they were barred by the statute of limitations.

4. Because the evidence showed that the new agreement was a mere verbal promise to pay what defendant was already bound to pay, and that it was wholly without consideration and not binding on either party.

The record shows that the deed from Adams to Heisch in consideration of which the notes described in plaintiffs' petition were given was a mere quitclaim. There was no want or failure of consideration of the notes given by the defendant to the ancestor of plaintiffs. The defendant was placed in possession of the land by his vendor, and he has continued to occupy it ever since.

The petition sets out both the new and the old contracts, and states the facts that led to making the new or parol agreement. It is true that plaintiffs did not in so many words allege that by the new agreement the notes were no longer to represent the contract to pay the money, but they did charge that for a new and additional consideration to be performed by plaintiffs a different and subsequent time of payment was agreed upon, and that it was stipulated that no suit should be instituted against the defendant upon the original causes of action. The notes by the terms of the new or parol contract continued to represent the amount of both principal and interest that was to be paid by the defendant, and therefore the new cause of action could not be fully stated without describing the original contract. We think the petition shows a good cause of action upon the parol agreement which matured on the 9th day of June, 1887, when plaintiffs procured a patent for the land. The ancestor of plaintiffs not having warranted the title to the land, they were not bound to procure a patent for the defendant, and their procuring one was a sufficient consideration upon their part to support the new agreement without regard to the amount it cost to procure it, or whether it cost them anything in money. The stipulation not to sue upon the notes until the patent should be procured, if it was made, was a sufficient consideration upon plaintiffs' part to support the new contract. The evidence tends to show that there was no express contract to release or not sue upon the notes as alleged by plaintiffs. Whether or not such an implication results from the entire evidence will be a question of fact for the jury to determine upon instructions submitting the issue, if it shall be considered material to do so upon another trial.

It is contended that as the only consideration of the parol agreement upon the part of the defendant was to pay notes for which he was already bound, there was nothing to bind plaintiffs to perform the agreement, and that it must therefore fail for want of mutuality. We have no doubt about the correctness of the proposition contended for, and that before plaintiffs had done something in the way of procuring the patent the agreement was not binding upon either party.

In Bishop on Contracts, section 87, it is said: "A contract is often such that until something is done under it, the consideration is imperfect, yet a partial performance or complete performance on one side supplies the defect. If for example one promises another, who makes no promise in return, to pay him money when he shall have done a specified thing, if he does it, not only is the contract executed on one side, but also the consideration is perfected and payment can be enforced."

"A contract arises upon executed consideration when one of the two parties has, either in the act which amounts to a proposal or the act which amounts to an acceptance, done all that he is bound to do under the contract, leaving an outstanding liability on one side only." Anson on Contracts, 116.

The benefit of a patent was a sufficient consideration of the defendants' promise without regard to an enlargement of the time for the payment of the notes, and it was not essential to the validity of the new agreement that it should include either the surrender or extension of time of payment of the notes.

As the new agreement was that the notes should be paid when the patent should be procured, they must be looked to for the purpose of ascertaining the amount for which judgment may be rendered, and no reason is apparent to us why the interest should not be calculated at the rate specified in the notes up to the date of the rendition of the judgment.

It results from what we have said that we are of the opinion that it was proper both to describe the notes in the petition and introduce them as parts of plaintiffs' evidence.

We find no error in the charge of the court upon the question of ratification of the parol contract. The plaintiffs in their petition describe it as their own act and seek to enforce it. That was a sufficient adoption and ratification of it, and it related back to its origin.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered May 15, 1891.