POYTHRESS v. IVEY et al. (No. 8822.)

(Court of Civil Appeals of Texas. Ft. Worth. March 16, 1918. Rehearing Denied April 20, 1918.)

1. LIMITATION OF ACTIONS ⟨⟩167(1)—ACTION TO ENFORCE RIGHT OF ACTION PLEDGED — BAR OF DEBT.

Though a pledge can be subjected to payment of a debt already barred, where the contract of bailment gives the pledgee the right to sell the article in case the debt is not paid, recovery cannot be had on a collateral note, where resort must be had to the court to establish the original debt and enforce the rights, and such debt is barred.

2. LIMITATION OF ACTIONS ⟨⟩146(1)—VERBAL ACKNOWLEDGMENT.

Mere verbal extension of past-due note without further consideration is within Vernon's Sayles' Ann. Civ. St. 1914, art. 5705, providing that acknowledgment of justness of claim after it is due, unless in writing, shall not toll the running of the statute.

3. LIMITATION OF ACTIONS ⟨⟩167(2) — FORE-CLOSURE OF MORTGAGE—BAR OF DEBT.

The debt secured being barred by limitations, action to foreclose mortgage is barred.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by Joe Poythress against Mrs. Minnie E. Evans Ivey and others. From the judgment, plaintiff appeals. Affirmed in part, and undisturbed in part.

R. H. Smith, of Ft. Worth, for appellant. Jas. C. Scott and Harris & Burton, all of Ft. Worth, for appellees.

BUCK, J. Appellant filed suit against Mrs. Minnie E. Evans Ivey, in her individual capacity as well as in the capacity of independent executrix of the estate of Wm. M. Evans, deceased, and her husband Richard M. Ivey and A. Lindsay and wife V. A. Lindsay, Nelson Mebane, Mrs. Mattie Jackson, H. L. Vaughn, W. J. Meggs, and J. R. Chambers. The petition alleged that Mrs. Ivey was the surviving spouse of Wm. M. Evans, deceased, and that since the death of Evans, Mrs. Evans had intermarried with Ivey; that on June 27, 1905, Evans executed to appellant his promissory note in the sum of $400, bearing interest at 10 per cent. per annum, and stipulating for the usual 10 per cent. attorney's fees; that on same date said Evans executed and delivered unto said appellant a deed of trust on lots 2 to 7 of block 1 of the Wm. M. Evans addition to the city of Ft. Worth, Tex., and that said mortgage was placed on record on July 5, 1905; that thereafter the said note for $400

was, by consecutive annual renewal extensions, extended to June 27, 1906, 1907, 1908, 1909, 1910, 1911, and 1912, as shown by various interest payments indorsed on back of said note; said note being extended from each recurring annual period after its original date of maturity, so that the last date of maturity thereon extended it to mature June 27, 1913, and all interest, to wit, the sum of $40 a year, was paid up to and including June 27, 1912, as shown by indorsements on back of said note, leaving due and outstanding thereon on June 27, 1913, the sum of $400, bearing interest from said date at 10 per cent. per annum. It was further alleged that on October 29, 1910, said Evans made and executed unto defendant Mebane his warranty deed, conveying lots 2 and 3 of block 1 of said addition, and as part payment therefor said Mebane executed and delivered unto said Evans his certain 19 promissory notes, payable monthly, each in the sum of $20; that after the first two notes had matured and been paid, said Evans hypothecated the other 17 of said notes to appellant to secure the $400 note, said notes being indorsed in blank, and that appellant became vested with the legal title thereto, together with the liens on said land and said notes to secure appellant in the payment of said $400 note; that on February 21, 1907, said Evans by general warranty deed conveyed to the Lindsays lot 6 out of said block, and that said Lindsays executed and delivered to said Evans their promissory note in the sum of $765, payable in monthly installments of $15 each; that said note had 41 credits indorsed on the back thereof as payments, aggregating the sum of $485; that on March 9, 1909, said Evans executed and delivered unto said appellant "his certain collateral promissory note" in the sum of $450, due one year from date, and bearing 10 per cent. interest, etc., "and said aforementioned note for $765 attached thereto as collateral security securing same, and also indorsed said note in blank on the back thereof, and deposited and hypothecated same with said Poythress as security for said $450." It was alleged that "by reason of such acts, said Poythress became vested with the title, liens, and security as securing same." A credit of $205 on the $450 note was admitted. It was further alleged that Mrs. Evans qualified as independent executrix of the estate of her deceased husband, and that thereafter said appellant filed his claim against the estate of said Wm. M. Evans, and that said claim was by the court approved for the sum of $689.31. It was further alleged that the other defendants were claiming some interest in portions of said land described, and were asking to have foreclosed their liens thereon, but that said claims and liens were inferior and subsidiary to the lien of plaintiff. De-

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fendants Lindsay and wife pleaded that any extensions given to plaintiff by said Evans on the $400 note were without their knowledge and consent and not binding on them, and that therefore they should be discharged on their plea of four-year limitation. They pleaded limitation also by exception. They further pleaded payment in full to Wm. M. Evans and his executrix, Mrs. Minnie E. Evans Ivey. From the judgment in favor of plaintiff as against Mrs. Minnie E. Evans Ivey, in her individual capacity and as independent executrix, and against Nelson G. Mebane, with the writ of foreclosure as against lots 2 and 3, owned by Mebane, and in favor of defendants Mrs. Mattie Jackson, H. L. Vaughn, the Lindsays, and the other defendants, plaintiff has appealed.

[1] On April 4, 1907, Poythress executed a release to lot 6, sold by Evans to the Lindsays on June 27, 1905, but by said instrument the lien existing on the other lots covered by the deed of trust was specifically stated to remain in full effect. The evidence supports the conclusion that the Lindsays had paid in full the amount of the said $765 note given by them to Evans, and hypothecated, by Evans to Poythress as additional security for Evans' debt to him, the payments being made to Evans during his lifetime, and after his death, on, to wit, December 22, 1912, such payments were made to the executrix; a receipt of payment in each instance being given. The evidence further shows that the inventory and appraisement filed by the executrix showed a balance due on the Lindsay note of $269.50. Plaintiff's testimony tended to show that prior to the filing of the inventory and appraisement Lindsay was notified by Poythress or his attorney that he held the note against lot 6, and that there was a balance due thereon of about $175. Lindsay denied ever having received such notice from Poythress or his attorney, but we do not think the conflict of testimony is material, since the controlling question is whether or not the original debt of Evans to Poythress evidenced by the $400 note was barred by limitation, for before Poythress could recover on the collateral note, he would have to establish in court the original debt evidenced by the $400 note to secure which the $765 note was given. In order to enforce his security, the plaintiff would be required to go into court, and would thereby necessarily bring himself within the operation of the statute of limitation. Limitation affects the right to enforce a claim through the medium of the courts, and not necessarily the validity or justness of said claim. It closes the doors of the tribunal to the tardy claimant who would seek the portals of the courthouse to enforce a right or to collect a claim in the assertion of which he has been guilty of undue laches. It is true that a pledge may be subjected to the payment of a debt already barred (17 R. C.

L. 948; 31 Cyc. 819; Tombler v. Palestine Ice Co., 17 Tex. Civ. App. 596, 43 S. W. 896; Gage v. Riverside Trust Co. [C. C.] 86 Fed. 984), where the contract of bailment gives the pledgee the right to sell the pledged article in case the debt is not paid, but not so where the pledgee must call upon the courts to establish and enforce his rights.

[2] The question to be determined is whether or not the $400 note dated June 27, 1905, could be successively extended by parol so as to prevent the running of the statute of limitation. Article 5705, V. S. Tex. Civ. Stats., is as follows:

"When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party [sought] to be charged thereby."

In Wells v. Moor, 42 Tex. Civ. App. 47, 93 S. W. 220, it is said:

"The new promise pleaded was a forbearance to sue on the part of plaintiff and a promise to pay the account at a later day on the part of defendant. The subject of the transaction was an open account. The promise of forbearance on the part of plaintiff was based on no consideration, and did not suspend his right to sue. Under the statute any acknowledgment made after a debt is due must be in writing in order to extend the bar. To allow plaintiff's contention would amount practically to an annulment of the statute. The case of Heisch v. Adams, 81 Tex. 94, 16 S. W. 790, cited by appellant, is not decisive of the question. The principle decided in that case is that a verbal contract made after the due date and before the bar of a note, and embodying new elements of consideration which amount to a novation, takes the place of the note forming in part the basis of the new contract, and the statute runs from the due date of the new contract. The facts here alleged fall far short of those in the case cited. In Howard v. Windom, 86 Tex. 560, 26 S. W. 483, it is held that the acknowledgment or new promise is a new cause of action which must be declared on. In Gibson v. Irby, 17 Tex. 174, it was held that a verbal agreement to extend the due date of a note, the debtor agreeing to pay the principal and interest on that date, did not bind the holder of the note not to sue sooner; the reason given being that the contract was without consideration passing from the debtor."

See Neyland v. Neyland, 19 Tex. 423, 430; San Antonio, etc., Loan Ass'n v. Stewart, 94 Tex. 441, 448, 61 S. W. 386, 86 Am. St. Rep. 864; Russ v. Cunningham (Sup.) 16 S. W. 446; Lowe v. Dowbarn, 26 Tex. 507, 510. Appellee cites a number of cases, to wit, Casey-Swasey v. Anderson et al., 37 Tex. Civ. App. 223, 83 S. W. 840, Carter-Battle Co. v. Clarke, 91 S. W. 882, Fambro v. Keith, 57 Tex. Civ. App. 302, 122 S. W. 40, Wright v. Deaver, 52 Tex. Civ. App. 130, 114 S. W. 165, and others, in which a parol agreement by the principal, without the consent of the surety, to extend the payment of a debt was held binding on the principal, and therefore to relieve the surety, but these cases do not deal with the question of limitation, nor dispute the rule that in order for the plaintiff to recover by reason of the parol promise he must declare on said parol promise, and not on the

original instrument in writing. In the instant case plaintiff did not seek to recover on the parol promise, but on the note itself. The last extension of interest, as pleaded, was made on June 27, 1912. The suit was filed August 21, 1914, more than two years thereafter. Hence any action on the oral contract alleged would have been barred by the two-year statute, even had plaintiff declared thereon. But he did not do so. Hence we conclude that the original note for $400, given on June 27, 1905, was at the time of the suit barred by the four-year statute of limitation, and that the Lindsays could successfully plead the statutes. In this connection it might be noted that there had been no formal assignment or transfer of the $765 note from Evans to Poythress put on record. Evans merely indorsed the note in blank and delivered it to Poythress. So the Lindsays had no constructive notice of the ownership by Poythress of the note in question. The actual notice was denied by A. Lindsay, as before stated.

[3] With reference to the defense of Mrs. Mattie Jackson and H. L. Vaughn, no vendor's lien notes from Mrs. Jackson's predecessor in title appear to have been executed to Evans and delivered to Poythress. The record does not disclose, so far as we have been able to determine, whether any vendor's lien was retained by Evans or not. It was agreed that Mrs. Jackson and Vaughn, claiming under G. W. Jackson, deceased, had held possession of lot No. 7, block No. 1, since the 4th day of August, 1908; that they proved actual possession of same by deed from Evans and wife to G. W. Jackson. No pleading of plaintiff suggests any right of foreclosure against the Jackson lot, unless such right be shown by reason of the $400 note and the deed of trust executed by Evans to secure the same. Hence as to this lot, the right of foreclosure would be barred, by reason of the statute which barred the debt from Evans to Poythress. No complaint is made as to the judgment against Mrs. Ivey individually and as executrix and against Mebane. The judgment in this respect will be left undisturbed, and otherwise will be affirmed. All assignments are overruled.

Affirmed in part, and undisturbed in part.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes